IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| INTEGRATED HEALTH SERVICES, INC., | ) ) ) | Case No. 00-389-MFW (Chapter 11) |
| Debtor. | ) ) ) | |
| BALTIMORE COUNTY, MARYLAND | ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | C.A. No. 03-1057-GMS |
| IHS LIQUIDATING LLC, | ) ) ) | |
| Appellee. | ) ) ) | |

## MEMORANDUM

### I.     INTRODUCTION

Presently before the court is an appeal from an order of the United States Bankruptcy Court

for the District of Delaware granting the motion of Appellee IHS Liquidating LLC ("the Liquidating

LLC") for a protective order to enforce section 12.12 of the Amended Joint Plan of Reorganization.

Although the court largely agrees with the legal arguments put forth by the Liquidating LLC, it is

nonetheless necessary to vacate the decision of the bankruptcy court and remand the case for further

proceedings in order to afford Appellant Baltimore County an opportunity to take discovery.

### II.     JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction to hear this appeal pursuant to 28 U.S.C.A. § 158(a)(1) (Supp

2005).  In reviewing a case on appeal, the bankruptcy court's factual determinations will not be set

aside unless they are clearly erroneous. *See Mellon Bank, N.A. v. Metro Comm., Inc.*, 945 F.2d 635, 641 (3d Cir. 1991). Conversely, a bankruptcy court's conclusions of law are subject to plenary review. *See id.*

## III.   BACKGROUND

The following facts were accepted by the bankruptcy court as true, and provided the basis for its decision. In connection with its Chapter 11 bankruptcy in February of 2000, Integrated Health Services, Inc. ("the Debtor") filed an Amended Joint Plan of Reorganization ("the Plan"), which was confirmed by the bankruptcy court on May 12, 2003. (D.I. 12, Ex. B.) As with many such reorganization plans, the Debtor's Plan provides for the creation of a Liquidating LLC to liquidate the Debtor's assets and distribute the resulting funds to creditors. (Section 5.9(c), (d); D.I. 12, Ex. A at 42.) Part of the liquidation process contemplated by the Plan includes the sale of the Debtor's headquarters in Sparks, Maryland ("the Headquarters Property"), which was purchased in 1997 using a financing arrangement known as a "synthetic lease." To effect the synthetic lease, the Debtor arranged for the Headquarters Property to be purchased by an independent trustee, Eric J. Donaghey, using funds provided by a mortgage lien from a syndicate of lenders represented by Citicorp USA, Inc. ("Citicorp"). At the same time, Donaghey agreed to lease the Headquarters Property to the Debtor, and to use the lease payments to make mortgage payments to Citicorp. In other words, Donaghey became a mere conduit for payments between the Debtor and Citicorp. And, while Donaghey may have technically held legal title to the Headquarters Property, he had no meaningful rights or liabilities with respect to the property.

"The entire point of a synthetic lease is that it is treated as an operating lease for accounting purposes, but is otherwise regarded by virtually all concerned, including the government, as a

secured loan." *Unocal Corp. v. Kaabipour*, 177 F.3d 755, 765-66 (9th Cir. 1999). Thus, one main

advantage of a synthetic lease is that it allows a corporation to assume a large debt without reporting

that debt on its balance sheet. *See Baron v. Smith*, 285 F. Supp. 2d 96, 105 (D. Mass. Sept. 30, 2003)

(quoting H. Peter Nesvold, *What Are You Trying to Hide? Synthetic Leases, Financial Disclosure,*

*and the Information Mosaic*, 4 Stan. J.L. Bus. & Fin. 83, 85-86 (1999)), *aff'd*, 380 F.3d 49 (1st Cir.

2004).   However, after the Debtor went bankrupt, that advantage disappeared.   Therefore,

section 4.2(d)(2) of the Plan provides that "the Debtor's interests in the Headquarters Property shall

be transferred to the Liquidating LLC, and the Disbursing Agent [*i.e.*, Citicorp] shall receive a

mortgage note from and executed by the Liquidating LLC . . . . secured by the existing first mortgage

lien on the Headquarters Property." (D.I. 12, Ex. A at 27.) The bankruptcy court found that, though

not artfully worded, the purpose of section 4.2(d)(2) is to collapse the synthetic lease arrangement

by transferring title from Donaghey to the Liquidating LLC so that the property may be sold for the

benefit of the syndicate of lenders. (Hrg. Tr. at 32:1-9; D.I. 10, App. at A132.)

That transfer was consummated on August 29, 2003. Shortly thereafter, the Liquidating LLC

sought to record the transfer documents in Baltimore County without paying certain associated taxes

under the authority of section 12.12 of the Plan, which provides:

> Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan of Reorganization, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan of Reorganization, shall not be subject to any stamp, real estate transfer, sales, use, mortgage recording or other similar tax.

(D.I. 12, Ex. A at 77.) Baltimore County did not agree, however, that the statutory reference, *i.e.*,

11 U.S.C.A. § 1146(c), *amended by* Pub. L. No. 109-8, § 719(b)(3), 119 Stat. 23, 133 (2005),[1] applied to the title transfer between Donaghey and the Liquidating LLC. Consistent with that belief, Baltimore County informed the Liquidating LLC that the transfer would not be exempt from taxation. In response, the Liquidating LLC filed a motion in the bankruptcy court seeking a protective order to enforce section 12.12 of the Plan. (D.I. 10, App. at A87-A93.) Baltimore County opposed the motion with two procedural arguments and three substantive arguments, but to no avail. After a round of briefing and oral argument, the bankruptcy court issued a written order in favor of the Liquidating LLC. The order, crafted by the Liquidating LLC, not only exempted the transfer from taxation, but also directed Baltimore County to record the transfer and prohibited Baltimore County from "seeking or requiring" transfer taxes. (See D.I. 10, App. at A98-A100.) Baltimore County now raises the same five arguments on appeal.

## IV. DISCUSSION

### A. Procedural Arguments

Baltimore County first argues that the bankruptcy court erred by issuing a protective order instead of an injunctive order. Even if that was an error, it is difficult to discern the prejudice Baltimore County suffered as a result. There is no indication that the bankruptcy court analyzed the motion under the standard provided by Fed. R. Civ. P. 26(c) ("Protective Orders").[2] To the contrary,

---

[1] Section 1146(c) was recodified in April 2005 as section 1146(a) by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 719(b)(3), 119 Stat. 23, 133. The substance of the new subsection (a) is identical to the substance of the old subsection (c). At present, however, none of the official code, the unofficial code, or their respective supplements and/or pocket parts have been updated to reflect that change. For the purposes of this opinion, the court believes confusion will most easily be avoided by continuing to refer to section 1146(c) as though the recodification has not yet occurred.

[2] Rule 26(c) is incorporated by reference in Fed. R. Bankr. P. 7026 and 9014(c).

the substance of the motion itself explicitly reveals that the Liquidating LLC's request for relief was made pursuant to 11 U.S.C.A. § 1142(b) (2004), which provides:

> The [bankruptcy] court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer or property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

Thus, Baltimore County's first procedural argument is nothing more than a disagreement with the lower court over semantics.

Baltimore County's second procedural argument – that the bankruptcy court should have resolved this dispute in an adversary proceeding rather than as a contested matter – is anything but semantic. Adversary proceedings in bankruptcy court are the analogue to lawsuits in district court – both are initiated by the filing of a complaint, and both are governed by the same rules of discovery. *See* Fed. R. Bankr. P. 7004, 7026-7037. Contested matters, on the other hand, are initiated by motion, and the applicability of the discovery rules is at the discretion of the court. *See* Fed. R. Bankr. P. 9014. Thus, adversary proceedings offer the litigants more formality and more discovery rights than contested matters. *See Nantucket Investors II v. Cal. Fed. Bank (In re Indian Palms Assocs., Ltd.)*, 61 F.3d 197, 204 n.11 (3d Cir. 1995). Consequently, a bankruptcy court's erroneous conclusion that a dispute need not be resolved in an adversary proceeding may be a ground for reversal. *See, e.g., MFS Telecom, Inc. v. Motorola, Inc. (In re Conxus Comm'ns, Inc.)*, 262 B.R. 893, 899 (D. Del. June 4, 2001).

One type of bankruptcy dispute that must be resolved in an adversary proceeding is "a proceeding to obtain an injunction." Fed. R. Bankr. P. 7001(7). Injunctions are orders that "require a party either to do or to refrain from doing some act, and are enforceable by contempt." 11A

Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2941 (1995). *See also Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 154 (3d Cir. 1999) (In the context of 28 U.S.C.A. § 1292(a)(1) (1993), which confers jurisdiction to the Circuit Courts of Appeals to hear certain interlocutory appeals, injunctions are "'[o]rders that are directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought by a complaint in more than a [temporary] fashion.' *Cohen v. Board of Trustees of the Univ. of Med. & Dentistry of N.J.*, 867 F.2d 1455, 1465 n.9 (3d Cir. 1989) (en banc) (alteration in original; quotations omitted).").

Here, the bankruptcy court concluded that an adversary proceeding was not necessary because the Liquidating LLC's motion was merely a request for the court to "interpret the terms of the Plan and enter an order confirming that that's what it says." (Hrg. Tr. at 32:19-23; D.I. 10, App. at A132.) However, that characterization does not match the substance of the order itself, in which Baltimore County is specifically "directed to record any transfer documents," and "prohibited from seeking or requiring payment of Transfer Taxes." (D.I. 10, App. at A99-A100.) Clearly, then, the bankruptcy court's order is an injunction – it required Baltimore County "to do" one act, and "to refrain from" doing another act.[3] As such, the dispute should have been resolved in an adversary proceeding. Nevertheless, the bankruptcy court's error in this regard is not a ground for reversal if the error was harmless. *See* Fed. R. Bankr. P. 9005; Fed. R. Civ. P. 61. Therefore, the court must address Baltimore County's three substantive arguments.

---

[3]Orders of the bankruptcy court are enforceable by contempt. *See* 11 U.S.C.A. § 105(a) (2004).

**B.**    **Substantive Arguments**

In its first substantive argument, Baltimore County contends that the statutory authorization

underlying section 12.12 of the Plan does not apply to transfers involving non-debtors, such as

Donaghey. The statute itself provides:

> The issuance, transfer, or exchange of a security, or the making or delivery
> of an instrument of transfer under a plan confirmed under section 1129 of this title,
> may not be taxed under any law imposing a stamp tax or similar tax.

11 U.S.C.A. § 1146(c). The plain language of the statute thus contemplates four essential elements:

there must be (1) an "issuance, transfer, or exchange of a security, or the making or delivery of an

instrument of transfer," (2) "under a plan," (3) "confirmed under section 1129 of [Title 11]," (4) that

is subject to a "law imposing a stamp tax or similar tax." *See Baltimore County v. Hechinger*

*Liquidation Trust (In re Hechinger Inv. Co. of Del., Inc.)*, 335 F.3d 243, 251-52 (3d Cir. 2003). That

the transfer involve only debtors is simply not among those requirements.

Baltimore County points to three cases that, in its view, conclude otherwise. In *In re Kerner*

*Printing Co.*, a debtor in possession had purchased property (prior to filing Chapter 11 bankruptcy)

using a financing arrangement similar to the synthetic lease involved in the present case. 188 B.R.

121, 122 (Bankr. S.D.N.Y. Oct. 31, 1995). Pursuant to a confirmed reorganization plan, the

synthetic lessor transferred title to the debtor in possession, and the debtor in possession then

transferred title to the lender. The lender was to sell the property primarily for its own benefit, and

for that of another creditor. The remaining proceeds, if any, were to return to the debtor in

possession for distribution to other creditors. The local taxing authority agreed that both the transfer

between the synthetic lessor and the debtor in possession, as well as the transfer between the debtor

in possession and the lender were tax exempt under § 1146(c). The taxing authority did not agree,

however, that a subsequent transfer from the lender to a third party was similarly exempt. The bankruptcy court ruled in favor of the taxing authority, reasoning that, in the absence of an agency relationship between the debtor in possession and the lender, a transaction between two non-debtors falls outside the scope of § 1146(c). *In re Kerner*, 188 B.R. at 125. By way of contrast, the transfer at issue here is between a non-debtor (Donaghey) and a party similarly situated to a debtor in possession (the Liquidating LLC) – a transfer of the type the taxing authority in *In re Kerner* conceded as *within* the scope of the statute. The court in *In re Amsterdam Ave. Dev. Assocs.*, 103 B.R. 454 (Bankr. S.D.N.Y. Aug. 11, 1989), also addressed a factually-dissimilar transfer to the one at issue in this case. There, the question was whether "a mortgage granted by a non-debtor *to a third party bank* in consideration of a loan utilized to purchase estate property . . . . is 'an instrument of transfer under a plan,'" *id.* at 459 (emphasis added), whereas here, the question is whether a transfer by a non-debtor *to a liquidating entity created by the reorganization plan itself* is a "transfer under a plan." The transaction at issue in *In re Bel-Aire Inv., Inc.*, 142 B.R. 992 (Bankr. M.D. Fla. July 1, 1992), is likewise dissimilar to the transfer at issue here. Thus, none of the three cases cited by Baltimore County alters the court's conclusion that a transfer involving a non-debtor can be within the scope of § 1146(c).

Baltimore County's second substantive argument is that the bankruptcy court did not, and does not, have subject matter jurisdiction to determine the tax liability of a non-debtor such as Donaghey under 11 U.S.C.A. § 505(a)(1) (2004):

> [T]he [bankruptcy] court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

However, in *Quattrone Accountants v. IRS*, the Third Circuit specifically held that "Section 505 . . . neither limits nor grants jurisdiction" to determine the tax liability of a non-debtor. 895 F.2d 921, 924 (3d Cir. 1990). The Third Circuit has, therefore, foreclosed this argument from consideration.

Finally, Baltimore County argues that the title transfer between Donaghey and the Liquidating LLC was not done "under a plan," as required by § 1146(c), because section 4.2(d)(2) of the Plan only explicitly authorizes the transfer of the *Debtor's* interest in the Headquarters Property, not *Donaghey's* interest. In *Hechinger Liquidation*, the Third Circuit interpreted "the phrase 'under a plan confirmed' in 11 U.S.C. § 1146(c) to mean 'made pursuant to the authority conferred by such a plan.'" 335 F.3d at 254. Baltimore County reads this to mean that all transfers, including the title transfer from Donaghey to the Liquidating LLC, must be explicitly spelled out in Plan. However, the Second Circuit concluded otherwise in *In re Jacoby-Bender, Inc.*, 758 F.2d 840 (2d Cir. 1985). In that case, a taxing authority sought to collect tax payments for a transfer from the debtor to an unrelated third party because "the plan did not mention any instrument of transfer and did not give the debtor the authority to make the specific sale." *Id.* at 841. The court strongly disagreed:

> The statute does not require that the reorganization plan include specifics. The City articulates no policy reason why Congress would have required specifics; indeed, Congress's apparent purpose in enacting section 1146 was to facilitate reorganizations through giving tax relief, a purpose served equally well when the reorganization plan leaves details to be settled in the future. Here, as the bankruptcy court found, "the plan's consummation depended almost entirely upon the sale of the building," the sale in turn depending upon the delivery of the deed. That the plan did not empower the debtor to make a specific sale or deliver a specific deed is irrelevant to our determination that the delivery of the deed took place "under" the plan within the meaning of section 1146(c).

*Id.* Although precedent from the Second Circuit is not binding in Delaware, this court finds the

9

reasoning in *In re Jacoby-Bender* to be persuasive. This court is also persuaded that the title transfer from Donaghey to the Liquidating LLC was essential to the ultimate sale of the Headquarters Property to a third party. Consequently, that transfer need not be explicitly mentioned in section 4.2(d)(2) to take place "under" the Plan.

In spite of the failings of Baltimore County's substantive legal arguments, the court nevertheless believes it necessary to vacate the bankruptcy court's decision and remand the case for further proceedings. The court's analysis thus far has been based entirely upon facts merely *accepted* as true. If the facts are as the Liquidating LLC represents them to be, then the title transfer is tax exempt. But, since there was no discovery, and therefore no meaningful opportunity for Baltimore County to challenge the accepted facts, the court is unable to conclude that the bankruptcy court's error in resolving this dispute as a contested matter was harmless.

## V.    CONCLUSION

For the aforementioned reasons, the order of the bankruptcy court will be vacated, and the case will be remanded for proceedings consistent with this opinion.

Dated: March __6__, 2006

_____
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| INTEGRATED HEALTH SERVICES, | ) | |
| INC., | ) | Case No. 00-389-MFW |
| | ) | (Chapter 11) |
| Debtor. | ) | |
| | ) | |
| | ) | |
| BALTIMORE COUNTY, MARYLAND | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | C.A. No. 03-1057-GMS |
| v. | ) | |
| | ) | |
| IHS LIQUIDATING LLC, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

**ORDER**

IT IS HEREBY ORDERED THAT:

1.      **The October 24, 2003 order** of the bankruptcy court be VACATED; and

2.      The case be REMANDED for proceedings consistent with this court's written opinion.

Dated: March _6_, 2006

UNITED STATES DISTRICT JUDGE